127 Cal.Rptr.2d 856 (2002)
104 Cal.App.4th 203
In re STUART S., a Person Coming Under the Juvenile Court Law.
Sutter County Department of Human Services, Plaintiff and Respondent,
v.
Linda S., Defendant and Appellant.
No. C039506.
Court of Appeal, Third District.
December 10, 2002.
Linda J. Conrad, for Defendant and Appellant.
Darrell W. Larsen, County Counsel, Richard Stout, Deputy County Counsel, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
NICHOLSON, J.
Linda S., mother of the minor, appeals from orders of the juvenile court made at the permanency hearing. (Welf. & Inst. Code, §§ 366.21, subd. (f); 395 [further undesignated section references are to this *857 code].) Appellant contends the court erred in reducing her visitation without finding visitation would be detrimental to the minor and exceeded its jurisdiction in adopting a permanent plan not authorized by statute. We shall modify the order of the juvenile court and affirm.

FACTS
The Sutter County Department of Human Services (DHS) removed Stuart, age 10, from appellant's custody in September 2000 due to appellant's neglect and emotional abuse of the minor which led to serious emotional and behavioral problems on his part. At the time the dependency petition was filed, the minor was residing in a restrictive, level 14 group home and had improved to the point where he could be released. However, he still needed a structured stable environment and continued treatment, neither of which was available in his own home. The court adopted a reunification plan and the minor remained in his group home placement.
The minor continued to make progress in the group home and looked forward to a new and less restrictive placement. Appellant, however, made little progress on her plan and her therapist reported appellant would need one to two years of therapy to internalize and apply the information she was receiving about dealing with her own problems.
By the 12-month review hearing, appellant had not made sufficient progress to reunify with the minor but wanted the minor returned because she was lonely during a separation from her boyfriend. The minor had moved to a less restrictive, level 10 group home but was not yet ready for regular foster care or adoptive placement because he still needed a structured, stable environment to overcome the problems which led to the dependency. The social worker's report for the review hearing recommended a change in visitation based upon appellant's ongoing erratic behavior, her failure to follow through on addressing her own mental health issues and her inability to access transportation to and from visits reliably without active assistance from DHS. The recommended findings and orders did not explicitly mention visitation, long-term foster care or adoption of the recommended case plan. The recommendations did include the following: "The Court finds that the Permanent Plan of another planned permanent living arrangement is appropriate." However, the plan attached to the report recommended placement in long-term foster care and included a change in visitation from twice monthly with two telephone calls per week to once per month visits with one telephone call per week.
At the review hearing, the court terminated reunification services and adopted the findings and orders recommended by the social worker's report. The court did not specifically adopt the case plan or separately modify visitation, stating only: "The plan for a permanent living arrangement is appropriate. A permanent plan as necessary."

DISCUSSION

I[**]

II
Appellant contends the "juvenile court exceeded its jurisdiction in adopting a permanent plan at the 12-month permanency hearing that was not one of the three plans authorized by the code." Respondent argues appellant has waived the issue by failing to raise it in the juvenile court and *858 further asserts the designation of "another planned permanent living arrangement" is federally mandated.
The issue tendered by appellant is subject to waiver. However, we exercise our discretion to address the merits in order to clarify the application of "another permanent planned living arrangement" as it relates to selection of permanent plan. (People v. Williams (1998) 17 Cal.4th 148, 161-162, fn. 6, 69 Cal.Rptr.2d 917, 948 P.2d 429.)
At the review hearings during the reunification stage of a dependency proceeding, the court is regularly required to determine whether a minor may be returned to parental custody or continued in foster care with reunification services. (§§ 366.21, subds.(e) & (g); 366.22, subd. (a).) In these reviews the court "shall project a likely date by which the child may be returned to and safely maintained in the home or placed for adoption, legal guardianship, or in another planned permanent living arrangement." (§ 366, subd. (a)(2).)
If the minor is not returned to parental custody and services are no longer appropriate, the court must either set a section 366.26 hearing to select a permanent plan or order the minor to remain in long-term foster care. (§§ 366.21, subds.(g)(2) & (g)(3); 366.22, subd. (a).) Under section 366.26, the options available to the juvenile court when determining a permanent plan for a minor when reunification efforts fail are adoption, legal guardianship and continuation in long-term foster care. (§ 366.26, subds.(b)d), (b)(3), (b)(4).)
Foster care, in its broadest sense "means the 24-hour out-of-home care provided to children whose own families are unable or unwilling to care for them and who are in need of temporary or long-term substitute parenting." (§ 11400, subd. (f).) In the dependency context, it means residential care provided in any of a number of settings, including an approved relative or extended family placement, a licensed nonrelative family home, a licensed group home, an exclusive-use home, a licensed transitional housing placement facility, or an out-of-state group home. (§ 11402; Cal. Rules of Court, rule 1401(a)(10).)
However, foster care placement lacks permanency. (65 Fed.Reg. 4020 (Jan. 25, 2000).) Children placed in the generic permanency plan of long-term foster care are often subjected to multiple changes in placement and sudden release from the foster care system as adults with no support structure. Congress addressed this problem in several ways when it passed the Adoption and Safe Families Act (Act) in 1997. (Pub.L. No. 105-89, 111 Stat. 2115.) This Act amended several provisions in existing federal law which set the standards a state is required to meet in order to qualify for federal funding to support ongoing foster care, transitional living for older foster children and other programs necessary for the dependency system to operate. (42 U.S.C.A. §§ 670-675.)
One way Congress addressed the problem of foster care drift was by expanding the possible options for a permanent plan to include arrangements, other than adoption, legal guardianship and relative placement, which also could provide a level of security and stability for a child. Congress also tightened oversight of those children remaining in foster care by requiring the state to continue to use reasonable efforts to move a minor to a permanent placement throughout the period of time the minor remained in foster care and to periodically review the case to assess when permanency may be achieved. (42 U.S.C.A. §§ 671(a)(14), (a)(15); 672(a)(1).)
Specifically, to qualify for federal funding, the case review system must include a procedure for assuring that "with respect *859 to each [foster] child, osprocedural safeguards will be applied, among other things, to assure each child in foster care under the supervision of the State of a permanency hearing to be held ... no later than 12 months after the date the child is considered to have entered foster care ... (and not less frequently than every 12 months thereafter during the continuation of foster care), which hearing shall determine the permanency plan for the child that includes whether, and if applicable when, the child will be returned to the parent, placed for adoption ..., or referred for legal guardianship, or (in cases where the State agency has documented to the State court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, or be placed for adoption, with a fit and willing relative, or with a legal guardian) placed in another planned permanent living arrangement...." (42 U.S.C.A. § 675(5)(Q.)
Regulations adopted to implement the program state: "If the State concludes, after considering reunification, adoption, legal guardianship, or permanent placement with a fit and willing relative, that the most appropriate permanency plan for a child is placement in another planned permanent living arrangement, the State must document to the court the compelling reason for the alternate plan. Examples of a compelling reason for establishing such a permanency plan may include: [11] (i) The case of an older teen who specifically requests that emancipation be established as his/her permanency plan; [H] (ii) The case of a parent and child who have a significant bond, but the parent is unable to care for the child because of an emotional or physical disability and the child's foster parents have committed to raising him/her to the age of majority and to facilitate visitation with the disabled parent; or, [If] (iii) the Tribe has identified another planned permanent living arrangement for the child." (45 C.F.R. § 1356.21(h)(3).)
Thus, the current federal scheme recognizes that some foster children may not be appropriate subjects for adoption or legal guardianship and may not have fit relatives who can provide a permanent home, but may be in a committed foster home, Tribal clan placement or other committed placement which, while technically being a foster care placement, nonetheless has the characteristics of the more stable and permanent placement alternatives of adoption or legal guardianship. The federal scheme also recognizes that some foster children may be appropriate subjects for emancipation and that this too constitutes a valid permanent plan. However, federal law permits these alternatives only when the state can document a compelling reason for straying from the traditional permanent plans. Accordingly, the alternative of "another planned permanent living arrangement" will be a relatively rare choice and can be selected only on an adequate showing.
It is clear from the language of the Act and related regulation that Congress did not intend to dispense with long-term foster care as a placement when reunification efforts had failed but to encourage regular review of status of foster children and permit creative solutions for safe, permanent living arrangements for minors who could no longer reside with their parents. Of course, the periodic reviews of the foster care placement permit the state to adapt as circumstances change and consider permanent plans which might not have been available at the time reunification services were terminated.
The California Legislature, by enacting changes to sections 366 and 366.3 in 1999 and adding "another planned permanent living arrangement" to the list of potential permanent plans to be considered in periodic *860 reviews, brought the state's case review system into compliance with the federal requirements to qualify for funding. (Sen. Health Com, 3d reading analysis of Sen. Bill No. 1270 (1999-2000 Reg. Sess.) Sept. 2, 1999, pp. 2-3.)
In this case, DHS did not present any evidence that the minor's placement qualified as another planned permanent living arrangement. Indeed, such evidence as there was, suggested that the minor would not remain permanently in a level 10 group home. Instead, as his treatment and behavior modification goals were met, both the minor and DHS contemplated that he would move to less restrictive placements. The juvenile court's finding appears to simply replace the phrase "long-term foster care" with the phrase "another planned permanent living arrangement." Neither Congress nor the Legislature intended this result. A planned permanent living arrangement may be a foster care placement which is particularly stable but it need not be. If such an arrangement exists, it arises from a particular case and set of circumstances and does not apply in every case. It does not apply here and the finding must be stricken.

DISPOSITION
The finding that the permanent plan of planned permanent living arrangement is appropriate is stricken. The minor's current permanency plan is long-term foster care. As modified, the orders of the juvenile court are affirmed.
We concur: BLEASE, Acting P.J, and ROBIE, J.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.
[**] See footnote *, ante.