[No. E062316. Fourth Dist., Div. Two. June 8, 2015.]

A.M., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY et al.,
Respondents;
SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,
Real Party in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.

508

COUNSEL

Sharon S. Rollo, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondents.

Jean-Rene Basle, County Counsel, Jeffrey L. Bryson and Jamila Bayati, Deputy County Counsel, for Real Party in Interest.

**OPINION**

**RAMIREZ, P. J.**—A.M., now aged eight, was born with severe genetic defects that left him deaf, blind, and lacking cognitive functioning. He has been a dependent of the juvenile court almost since birth; when he was four, parental rights were terminated. All through his young life, he has been cared for by professionals at a health care facility. Now, however, the juvenile court has approved his placement for adoption with a woman in Northern California who has a history of adopting children with special health care needs.

■ Minor's counsel has appealed on A.M.'s behalf. In the published portion of this opinion, we will hold that under Welfare and Institutions Code section 366.28, which restricts the appealability of a specific placement order after parental rights have been terminated, the challenged order is nonappealable; however, we find good cause to exercise our discretion to deem the failed appeal to be a writ petition. In the unpublished portion of this opinion, we will hold that the adoptive placement was not an abuse of discretion.

I

FACTUAL AND PROCEDURAL BACKGROUND

C.M. (the father) impregnated his daughter K.M. (the mother) when she was 14 years old. As a result, in October 2006, San Bernardino County Children and Family Services (CFS) filed a dependency petition regarding the mother. In January 2007, the mother was adjudicated a dependent.

When A.M. was born, in February 2007, he suffered from softening of the brain, cerebral palsy, spastic quadriplegia, and seizures. Initially, doctors believed this was due to an "intrauterine insult." Eventually, however, they came to believe it was more likely due to "the summation of several different genetic disorders" resulting from "parental consanguinity."[1]

The mother was unable to care for A.M. When he was ready to be discharged, CFS detained him and filed a dependency petition regarding him. He was placed at Bain House, an intermediate care facility for developmentally disabled children with a nursing component (ICF/DD-N) operated by Mountain Shadows Special Kids Homes (Mountain Shadows).

In April 2007, at the jurisdictional hearing, the juvenile court sustained jurisdiction based on failure to protect (Welf. & Inst. Code, § 300, subd. (b)),

---

[1] Most significantly, he had inherited two copies of a defective gene for creatine metabolism; this caused mental retardation and seizures.

sexual abuse (*id.*, § 300, subd. (d)), failure to support (*id.*, § 300, subd. (g)) and abuse of a sibling (*id.*, § 300, subd. (j)). At the dispositional hearing, it formally removed A.M. from his parents' custody. It ordered reunification services for the mother but denied them for the father.

In October 2007, at the six-month review hearing, the juvenile court terminated reunification services and set a permanency planning hearing pursuant to Welfare and Institutions Code section 366.26 (section 366.26).

In February 2008, at the section 366.26 hearing, the juvenile court found that A.M. had a probability of adoption but was difficult to place for adoption. Accordingly, it identified adoption as the permanent placement goal and continued the hearing without terminating parental rights. (See Welf. & Inst. Code, § 366.26, subd. (c)(3).)

In August 2008, at the continued section 366.26 hearing, the juvenile court ordered a planned permanent living arrangement (PPLA)[2] of placement with Mountain Shadows, with the specific goal of adoption.

In November 2010, one Ms. S. expressed an interest in adopting A.M. She was already caring for five "medically fragile" children and adults, four of whom she had adopted (she was the conservator of the fifth). Accordingly, CFS filed a "changed circumstances" petition pursuant to Welfare and Institutions Code section 388 (section 388), seeking to change the permanent plan to adoption.

In February 2011, the juvenile court granted the section 388 petition and set a new section 366.26 hearing.

In May 2011, at a pretrial hearing, minor's counsel expressed concern about the proposed adoption. As a result, the social worker inspected Ms. S.'s home, interviewed Ms. S., and filed an addendum report.

In June 2011, at the section 366.26 hearing, minor's counsel indicated that the social worker's latest report "has . . . more than answered all of the concerns that I had." "[S]he did an excellent job, and now I feel much, much

---

[2] The Adoption and Safe Families Act of 1997 (Pub.L. No. 105-89 (Nov. 19, 1997) 111 Stat. 2115) coined the term "planned permanent living arrangement" for any living arrangement other than reunification, adoption, legal guardianship, or placement with a relative. (42 U.S.C.A. § 675(5)(C).) The term was intended to replace the largely overlapping category, "long-term foster care." (*In re Stuart S.* (2002) 104 Cal.App.4th 203, 207–209 [127 Cal.Rptr.2d 856].) Some California statutes, however, still refer to "long-term foster care." (E.g., Welf. & Inst. Code, §§ 366.22, subd. (a), 366.25, subd. (a)(3), 366.26, subds. (b)(6), (c)(1)(B)(vi)(II), (c)(4)(A), 366.3, subds. (d)(3), (h), (i).)

more content." The juvenile court found that A.M. was adoptable, terminated parental rights, and selected adoption as the permanent plan.

In December 2011, the social worker reported that transitioning A.M. to Ms. S.'s home would take three or four days; however, Ms. S. could set aside only two days for this purpose. She warned, "The fact that Ms. S[.] is only willing to set aside two . . . days may jeopardize this placement."

Later in December 2011, at a postpermanency status review hearing, the juvenile court found that adoption was still the appropriate permanent plan.

In June 2012, the social worker reported: "Minor's counsel opposed the adoptive placement at the last court hearing, so adoptive planning was not continued with the prospective adoptive parent."[3]

Later in June 2012, at the next postpermanency review hearing, the juvenile court found that a PPLA at Mountain Shadows, with a specific goal of adoption, was the appropriate permanent plan.[4]

The next social worker's report, in December 2012, stated, "The child was considered for a potential adoptive placement; however, another adoptive family will have to be sought after and recruited." It did not explain further.

In March 2014, the social worker was speaking to members of Ms. S.'s family about another child. She happened to mention that A.M. was still available for adoption. "[T]he family immediately gasped and became tearful. They believed that he had already been adopted and were shocked to learn that was not the case. They requested to be able to go and see [A.M.], but this was not permitted at that time."

In June 2014, the social worker filed a report recommending "that a [section] 366.26 hearing be set to establish a permanent plan of adoption."

In November 2014, at a postpermanency review hearing, the juvenile court found that a PPLA was no longer the appropriate permanent plan and

---

[3] This seems to be a mistake; as mentioned, at the most recent hearing, minor's counsel had endorsed the placement.

Although we are speculating somewhat, the record hints that the real problem may have been that another child from San Bernardino County had already been placed for adoption with Ms. S., and it was CFS policy not to place two unrelated children with the same prospective adoptive parent at the same time.

[4] The juvenile court apparently relied on the social worker's report stating—incorrectly—that this was the "current" permanent plan.

changed the permanent plan to adoption. It also ruled: "[T]here is no abuse of discretion committed by [CFS] in locating this permanent home for the minor to permit adoption . . . ." Thus, it gave CFS the authority to place A.M. for adoption. It was agreed that CFS would file an "information packet" before making the actual change of placement, to give minor's counsel an opportunity to appeal and to seek a stay. It was also agreed that a new section 366.26 hearing was not necessary.

Two days later, minor's counsel filed a notice of appeal. In February 2015, acting on a supersedeas petition filed by minor's appellate counsel, we stayed the order authorizing a change of placement.

II

APPEALABILITY

On our own motion, we questioned whether the challenged order is, in fact, appealable. At our request, the parties filed supplemental briefs addressing this issue.

■ "In dependency proceedings, the order entered at the dispositional hearing is a final judgment and thus is an appealable order. [Citations.]" (*In re Adam D.* (2010) 183 Cal.App.4th 1250 1261 [108 Cal.Rptr.3d 611].) As a general rule, "any subsequent order may be appealed as an order after judgment." (Welf. & Inst. Code, § 395, subd. (a).) However, there are exceptions.

One such exception is found in Welfare and Institutions Code section 366.28 (section 366.28), which, as relevant here, provides:

"(b)(1) After parental rights have been terminated pursuant to Section 366.26, an order by the court that a dependent child is to reside in, be retained in, or be removed from a specific placement, is not appealable at any time unless all of the following apply:

"(A) A petition for extraordinary writ review was filed in a timely manner.

"(B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record.

"(C) The petition was summarily denied or otherwise not decided on the merits.

"(2) Failure to file a petition for extraordinary writ review within the period specified by rule of court, to substantively address the specific placement order that is challenged, or to support that challenge by an adequate record shall preclude subsequent review by appeal of the findings and orders made pursuant to this section." (§ 366.28, subd. (b).)

According to the legislative history of section 366.28, "[t]he introduction of the bill was prompted in part by the case of *In [r]e Harry N.* (2001) [93 Cal.App.4th 1378 [114 Cal.Rptr.2d 46]]. In that case, both the foster family and the blood relatives of the child sought to adopt him. After the local child services agency ordered placement with the relatives, the foster family appealed, an appeal which took eighteen months to resolve—at the end of which time the child was removed from the foster family and placed with the relatives. The length of the appeals process in that case served no one's interest, least of all that of the child, who was denied the security of permanent placement for over a year." (Assem. Com. on Judiciary, analysis of Sen. Bill No. 59 (2003–2004 Reg. Sess.) as amended June 11, 2003, p. 1, italics added.)[5]

Here, the juvenile court's ruling giving CFS the authority to place A.M. with Ms. S. is nonappealable under section 366.28. However, that is not all the juvenile court did: It also changed A.M.'s permanent plan from a PPLA to adoption. Minor's appellate counsel contends that this aspect of the order is appealable.

In considering the scope of section 366.28, we look to an analogous provision, Welfare and Institutions Code section 366.26, subdivision (*l*) (section 366.26(*l*)). It provides that an order setting a section 366.26 hearing "is not appealable at any time" unless a timely and adequate writ petition has been filed and summarily denied or otherwise not decided on the merits. Section 366.28 is closely modeled on section 366.26(*l*).

In applying section 366.26(*l*), it has been held that, in addition to the order setting a section 366.26 hearing itself, any contemporaneous order that is "designed to overturn" the order setting a section 366.26 hearing is likewise nonappealable, even if it would otherwise be appealable. (*In re Rashad B.* (1999) 76 Cal.App.4th 442, 447–448 [90 Cal.Rptr.2d 462], and cases cited; accord, *In re Cicely L.* (1994) 28 Cal.App.4th 1697, 1705–1706 [34 Cal.Rptr.2d 345] [Fourth Dist., Div. Two].) We believe a similar test of appealability should apply under section 366.28. That is the only way to carry

[5] Available at <http://www.leginfo.ca.gov/pub/03-04/bill/sen/sb_0051-0100/sb_59_cfa_20030616_181756_asm_comm.html> (as of June 8, 2015).

out the legislative intent of preventing lengthy appeals from delaying a child's permanent placement.[6]

Here, in June 2012, the juvenile court had approved a PPLA at Mountain Shadows as A.M.'s permanent plan. Thus, before A.M. could be placed for adoption, the juvenile court had to change the permanent plan.[7] If we were to agree that the juvenile court erred by changing the permanent plan to adoption, that would necessarily mean that it also erred by placing him for adoption with Ms. S. In sum, any challenge to the order changing A.M.'s permanent plan is designed to overturn the order placing him with Ms. S. Accordingly, both aspects of the juvenile court's order are equally nonappealable.

Minor's counsel also contends that compliance with the writ requirement should be excused because the juvenile court did not expressly advise the parties of the requirement.

Once again, this argument depends on an analogy to section 366.26(*l*). That subdivision directs the Judicial Council to adopt a court rule that the juvenile court, when it sets a hearing under section 366.26, must "advise all parties of the requirement of filing a petition for extraordinary writ review as set forth in this subdivision in order to preserve any right to appeal in these issues." (Welf. & Inst. Code, § 366.26(*l*)(3)(A).) And the Judicial Council has done so. (Cal. Rules of Court, rule 5.590(b); see Cal. Rules of Court, former rule 1435(b).)

"Courts have held that where the juvenile court fails entirely to advise a parent of his or her right to seek writ review of an order terminating reunification services and setting a section 366.26 hearing, claims of error relating to provision of reunification services are cognizable on appeal from the order terminating parental rights. [Citations.]" (*In re X.Z.* (2013) 221 Cal.App.4th 1243, 1250–1251 [165 Cal.Rptr.3d 100].) This is because the absence of a writ advisement ordinarily constitutes good cause for the parent's failure to file a writ petition. (*In re Cathina W.* (1998) 68 Cal.App.4th 716, 722 [80 Cal.Rptr.2d 480].)

---

[6] Section 366.28, subdivision (c) provides: "This section does not affect the right of a parent, a legal guardian, or the child to appeal any order that is otherwise appealable and that is issued at a hearing held pursuant to Section 366.26." The order challenged here was issued at a review hearing pursuant to Welfare and Institutions Code section 366.3, not a section 366.26 hearing. Accordingly, we have no occasion to consider whether a similar order issued at a section 366.26 hearing would be appealable under this provision.

[7] It is at least arguable that the juvenile court could not change the permanent plan at a review hearing, and that it should have set a section 366.26 hearing first instead. (See Welf. & Inst. Code, § 366.3, subd. (h).) Nevertheless, that is what it did. None of the parties objected; in fact, they agreed that a section 366.26 hearing was not necessary.

This is so even when a parent has appointed counsel. "The 'burden is on the *parent* in a juvenile dependency case to pursue his or her appellate rights[; i]t is not the *attorney's* burden.' [Citations.] In the absence of a specific direction from the [parent], [his or] her attorney in the juvenile court [i]s not obligated to take any steps to comply with section 366.26, subdivision (*l*), on [the parent]'s behalf. [When] the [parent] ha[s] not been notified that [he or] she must seek relief by writ petition under this statute, [the parent] could not very well have directed [his or] her attorney to take steps to do so." (*In re Cathina W., supra*, 68 Cal.App.4th at pp. 723–724, fn. omitted.)

█ In this respect, however, the analogy to section 366.26(*l*) breaks down. First, the rules of court implementing section 366.28 do not require the trial court to advise the parties of the writ requirement. (See Cal. Rules of Court, rules 5.590, 8.454, 8.456.) Second, while the lack of an advisement may be good cause for a *parent's* failure to file a writ petition, it is not good cause for a *child's* failure. The child's appointed counsel normally acts as guardian ad litem for the child. (Welf. & Inst. Code, § 326.5; Cal. Rules of Court, rule 5.662(e), (f); *In re Josiah Z.* (2005) 36 Cal.4th 664, 680 [31 Cal.Rptr.3d 472, 115 P.3d 1133].) Here, the trial court expressly appointed minor's trial counsel as guardian ad litem. Thus, it is fair to presume that the child, through his or her counsel, can file a writ petition even without an advisement. Requiring an advisement under these circumstances would be a pointless formality. (Most likely this is why the Judicial Council did not require one.)

Finally, minor's counsel asks us to treat the failed appeal as a writ petition.

█ We have discretion to treat a purported appeal as a petition for writ of mandate. (*Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720].) Admittedly, " '[a] petition to treat a nonappealable order as a writ should only be granted under extraordinary circumstances, " 'compelling enough to indicate the propriety of a petition for writ . . . in the first instance . . . .' [Citation.]" ' [Citation.]" (*H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1367 [118 Cal.Rptr.2d 71].)

Such circumstances, however, are present here. The notice of appeal was filed within the seven-day time limit for filing a notice of intent to file a writ petition. (Cal. Rules of Court, rule 8.454(e)(4).) The record is adequate for purposes of writ review. The appeal has been fully briefed. (See *Fox Johns Lazar Pekin & Wexler, APC v. Superior Court* (2013) 219 Cal.App.4th 1210, 1217 [162 Cal.Rptr.3d 571].) Significantly, CFS responded to the appeal on the merits; it did not argue that we should dismiss the appeal until we spotlighted the issue and requested further briefing. Meanwhile, minor's trial counsel has advocated doggedly for what he perceives to be A.M.'s best

interests; it would be inequitable to let it appear that his decision to file a notice of appeal rather than a writ petition was the only reason why his position did not prevail. Finally, if we dismiss the appeal, the underlying issues will effectively evade review (see *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1098 [118 Cal.Rptr.2d 862]); they cannot be presented in some future appeal, and it is too late to file a new writ petition. By publishing this opinion, however, we warn the bar and the public that we will not grant relief from the writ requirement so readily in the future.

Accordingly, we conclude that the challenged order is not appealable, but we elect to treat the appeal as a writ petition.

III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

DISPOSITION

The purported appeal is deemed to be a petition for writ of mandate, and as such, is denied.

Hollenhorst, J., and Codrington, J., concurred.

---

*See footnote, *ante*, page 506.