Filed 10/20/23  In re Ril.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re RIL.S. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADRIANA L.,<br><br>Defendant and Appellant. | F086303<br><br>(Super. Ct. Nos. 21CEJ300081-1, 21CEJ300081-2, 21CEJ300081-3, 21CEJ300081-4)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Kimberly J. Nystrom-Geist, Judge.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Adriana L. (mother) appeals from orders terminating her parental rights to her minor children, Ril.S. and Ric.S. (the twins), and D.D. and J.D. (the boys) pursuant to Welfare and Institutions Code section 366.26.[1] Mother argues the court erred when it did not apply the beneficial parent-child relationship to termination of her parental rights as to the twins. Mother further argues that her due process rights were violated when the court suspended her visitation with the boys and subsequently terminated her parental rights based on the absence of a relationship.

We conclude the court did not err when it found the beneficial parent-child relationship did not apply to the twins. We further find mother forfeited her challenge to the suspension of visits with the boys when she failed to allege the argument in her petition for extraordinary writ.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Twins*

On March 5, 2021, the Fresno County Department of Social Services (the department) filed an application for a protective custody warrant, pursuant to sections 300, subdivision (b), and 340, subdivision (a), to remove the twins from mother's care. The department alleged mother used inappropriate discipline including yelling, cursing, and threatening to " 'beat the fuck out of' " the twins who were 10 months old at the time. It was further alleged mother and the twins' father exposed the children to ongoing domestic violence.

At the initial detention hearing on March 11, 2021, the court detained the twins from mother and their father. The twins were ordered to have supervised visitation with mother twice per week. On June 30, 2021, the court sustained the section 300 petition,

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise noted.

and ordered reunification services for mother and their father. Mother was further ordered to participate in parenting classes, substance abuse treatment, drug testing, mental health treatment, and domestic violence treatment.

On October 11, 2022, at the contested 12-month review hearing for all four children, reunification services for all four children were terminated. Mother's supervised visits with the twins were reduced to twice per month for one hour, due to mother being late to most of the visits and missing many visits. The court noted mother's failure to be on time to visits and mother's cancellations or skipped visits did cause stress and harm to the children. A section 366.26 hearing was scheduled and mother was advised of her writ rights.

Mother filed a petition for extraordinary writ on January 4, 2023. This court filed an opinion denying the writ petition on January 27, 2023. (*Adriana L. v. Superior Court* (Jan. 27, 2023, F085126 [nonpub. opn.].).)

A contested section 366.26 hearing was held on May 8, 2023. A social worker for the department testified about her observations of mother's visits with the twins. She testified that during mother's remote visitation in November 2022, the children initially did not appear to recognize mother, although one of the twins did call mother "mama" once. During in-person visits, the social worker testified that the twins gave mother hugs and kisses and mother interacted with the twins in a positive manner.

The social worker also testified that although mother was consistent with her visits at first, her visits had become inconsistent, and she missed her visitation on April 4 and April 18, 2023. There were also times the twins would keep playing with their toys and not respond to mother's hugs and kisses.

Mother testified that the twins recognized her during the visits. She testified that one twin would be excited when the visits ended, but the other would get sad and emotional. The twins would run to her and give her hugs, and call her "mom." At their

most recent visit, the twins were excited to see her and ran to give her hugs. At the end of the visit, mother told the twins "I'll see you later" and they hugged and kissed.

The court ultimately terminated mother's parental rights as to all four children. As to the twins, the court found:

> "[T]he Court agrees with the Department's conclusion. [The twins] have been out of their mother's care for two-thirds of their life. All of their significant development has taken place separate from their mother. Their mother does visit them as permitted by court orders. Those visits go well. Other than that the children recognize her now, early on they were confused and it is not clear that they always recognize her in visits, but they do recognize her now. They call her by a maternal name, as they do their care provider. The visits go well. The evidence supports only that the mother is a friendly visitor for the children. While there may be a benefit to the children in the positive visits, it is an incidental benefit and not the significant benefit that it would be in the mother's burden to demonstrate.
>
> "Having considered the requirements of Caden C.[2] and the statute, the Court finds that there is insufficient evidence to find a compelling reason not to terminate parental rights under either the beneficial parent/child relationship or the sibling bond relationship."

*The Boys*

On June 4, 2021, the department filed an application for a protective custody warrant, pursuant to section 300, subdivision (b), to remove the boys from the care of their legal guardian, their great-grandmother. The department alleged the great-grandmother suffered from bipolar disorder and was hospitalized pursuant to section 5150. The department also alleged the great-grandmother had hit one of the boys in the face, and continued to allow mother unsupervised contact with the boys despite mother's own anger issues, domestic violence, and inappropriate discipline with the boys.

At the detention hearing on June 15, 2021, the court found a prima facie showing that continuance of the boys in the home of the great-grandmother was contrary to the children's welfare. Mother was offered supervised visits with the boys and services.

---

**2** *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*).

At the contested jurisdiction/disposition hearing on November 4, 2021, the court found the allegations in the June 8, 2021 petition true and terminated the guardianship of the boys. Mother was ordered reunification services including parenting classes, substance abuse, mental health, and domestic violence evaluations, and was recommended treatment and random drug tests.

During the reunification period, since April 13, 2022, both of the boys refused to attend visits with their mother because they did not feel safe. Mother was observed to struggle with boundaries and respecting the boys' space. She would continue to kiss and hug the boys without asking, causing them to have meltdowns and feel uncomfortable. During one visit, mother told the boys they needed to stop talking to the social worker because it was making it hard on her to get the boys back.

The court held a combined 12-month review hearing for the twins and the boys on October 11, 2022. In preparation for the hearing, the boys provided answers to written questions in lieu of live oral testimony. Both boys said they were not visiting with mother because they did not want to.

The court terminated reunification services for all four children. As to the boys, the court found:

> "[The boys] are afraid of their mother. They are unwilling to be in the same room with her. They are barely willing to see a building where she may be. They are unwilling to speak to her. They will not visit with her in any way. The mother has not progressed in her relationship with [the boys] and in many ways have regressed from the point where there were visits. I will address the reasonableness of visits at the time when I get to the next prong of the analysis. But certainly for these two boys . . . who are too frightened even to hear their mother's voice, to see her, to see a toy that reminds them of her, who act out around the time that visits were going to take place, . . . act out to the point of self-harm, are reduced to—for one of the children full trauma mode. There is a tremendous risk of detriment to their safety, protection, physical or emotional well-being."

Mother's visitation with the boys was suspended based on the evidence presented, and the court found visits between the boys and mother to be detrimental. A section 366.26 hearing was scheduled, and mother was advised of her writ rights.

Mother filed a petition for extraordinary writ on January 4, 2023. This court filed an opinion denying the writ petition on January 27, 2023. (*Adriana L. v. Superior Court*, *supra*, F085126.) In her petition, the mother argued there was insufficient evidence that returning the boys and twins to her care would create a substantial risk of harm to them, that the department failed to provide reasonable services, and that the juvenile court erred in finding clear and convincing evidence that it would be in the best interests of the children to proceed with a section 366.26 hearing. (*Adriana L. v. Superior Court*, *supra*, F085126.)

A contested section 366.26 hearing was held on May 8, 2023. Mother testified that her visits with the boys, when they would see her, were happy. The maternal grandmother testified that mother would spend time with the boys when they were in the custody of the great-grandmother and the boys were happy to spend time with their mother. On cross-examination, maternal grandmother admitted that she had not seen the mother interact with the boys for at least a year.

The court ultimately terminated mother's parental rights as to all four children. As to the boys, the court found:

> "Regarding [the boys], the Court will analyze as to [the boys] as though the mother had been exercising visits regularly, because she has made attempts to maintain that relationship to the extent permitted by Court order. So the limitations in the mother's visits are the reality of the orders of the Court and not that the mother has simply ceased visits or does not show up or does not express an interest. In fact, the evidence is quite the contrary. The mother has consistently asked social worker if she can have visits, asked when she can have visits. And it is the Court order that has limited the mother's contact with [the boys].

> "[The boys] are adamant that they do not want a relationship with the mother. They do not wish to see her. They refuse to see her. Her visits

6.

were limited by a Court order after evidence was produced which caused the Court to conclude that contact with the mother is detrimental to the children. There has been no evidence presented today that would cause the Court to reach a different conclusion. It is clear that the mother cares very much about [the boys] and that she would like a relationship with them. And that for her it is a positive relationship, and despite any compassions that arise for the mother's loss and the mother's needs, the law requires this Court to concentrate and focus solely on the children. The question is not whether the mother cares for the children or whether the mother will suffer the loss of the children. The evidence is overwhelming that [the boys] are negatively impacted by contact with the mother. The mother's participation and even visitation with them is detrimental rather than beneficial. Therefore as to [the boys], acknowledging that the mother has utilized time as permitted by the Court orders, her participation with them is detrimental rather than beneficial. And the Court must conclude that the beneficial parent/child relationship does not apply to the mother as to [the boys]."

Mother filed a timely notice of appeal on May 23, 2023, appealing from the findings and order regarding the termination of parental rights.

## DISCUSSION

### I. The Juvenile Court Did Not Err Finding That the Beneficial Parent-child Relationship Does Not Apply to the Twins

Mother argues that the twins had a significant and positive attachment to her, developed and maintained through her visitation, would have benefited from continuing a positive relationship with her, and it was detrimental to the twins to terminate her parental rights. We find the court did not err in declining to apply the exception.

#### A. Legal Standard

The avowed goal of dependency law is to protect children who are physically, sexually or emotionally abused, neglected or exploited. (§ 300.) "Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*).) Thus, pursuant to section 366.26, subdivision (c)(1), "[i]f the court determines, based on the assessment provided as ordered . . . and any other

relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption."

There are several statutory exceptions to termination of parental rights in these circumstances. At issue in this case is the beneficial child-parent relationship exception, which applies where "[t]he court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

"In the context of the dependency scheme prescribed by the Legislature, we interpret the 'benefit from continuing the [parent/child] relationship' exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) "If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Ibid.*)

This exception consists of three elements. "(1) [R]egular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 631, italics omitted.)

As to the first element, regular visitation asks only whether the " 'parents visit consistently,' taking into account 'the extent permitted by court orders.' [Citation.]" (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) As to the second element, "courts assess whether 'the child would benefit from continuing the relationship.' (§ 366.26, subd. (c)(1)(B)(i).) Again here, the focus is the child. And the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's

custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' [Citation.]" (*Ibid.*)  As to the final element, courts need to determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Id.* at p. 633.)

On appeal, this court reviews the first two elements for substantial evidence, and the third element for abuse of discretion.  (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640.)  "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.)  To show an abuse of discretion, the juvenile court must have " ' "exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice." ' " (*In re Ray M.* (2016) 6 Cal.App.5th 1038, 1050–1051.)

### B.    Analysis

Mother argues the evidence does not support the court declining to apply the beneficial parent-child relationship exception to termination of parental rights.  The department concedes that substantial evidence supports the first element of the exception, that the mother maintained regular visitation with the twins, but argues evidence does not support the second two elements.

Substantial evidence supports the court's finding that mother did not have a relationship with the twins other than that of a "friendly visitor."  At the time of the hearing, the twins were three years old, and had spent two-thirds of their lives out of their mother's care.  They were removed from mother in part because she was threatening to " 'beat the fuck' " out of them and exposed them to domestic violence.  And while the twins would be upset when mother was late or missed visits during the reunification period, when visits began in November of 2022, the twins initially did not recognize or

9.

respond to her. They also called both her and their care provider by a maternal name. Finally, at least one of the twins was not distressed by the visits ending.

"Interaction between natural parent and child will always confer some incidental benefit to the child." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) Such incidental benefit is not the "substantial, positive emotional attachment" necessary to satisfy mother's burden to prove the parent-child relationship exception. (*Ibid.*)

Mother then argues it is particularly detrimental to deprive the twins of a beneficial relationship with their mother, who has dedicated herself to becoming clean, sober, and a better mother for her children. Mother relies on *In re S.B.* (2008) 164 Cal.App.4th 289 to support her argument.

In *In re S.B.*, *supra*, 164 Cal.App.4th 289, the father was the minor's primary caregiver for three years. When the minor was removed from the father's care, the father immediately recognized that his drug use was untenable, started services, maintained his sobriety, sought medical and psychological services, and maintained consistent and regular visitation with the minor, complying with every aspect of his case plan. (*Id.* at p. 298.) Likewise, for the first year after the minor was removed from the father's custody, the minor displayed a strong attachment to him. She was unhappy when visits ended and tried to leave with the father. She would tell the father, " 'I love you,' " and when the father started to leave she stated, " 'I'll miss you,' " and said, " 'I wish I lived with you and Mommy and Nana.' " (*Ibid.*)

The court found "[the father] maintained a parental relationship with [the minor] through consistent contact and visitation. His devotion to [the minor] was constant, as evinced by his full compliance with his case plan and continued efforts to regain his physical and psychological health. The record shows [the minor] loved her father, wanted their relationship to continue and derived some measure of benefit from his visits. Based on this record, the only reasonable inference is that [the minor] would be greatly

10.

harmed by the loss of her significant, positive relationship with [the father.]" (*In re S.B.*, *supra*, 164 Cal.App.4th at pp. 300–301.)

In this case, no comparable evidence of detriment was presented. When the twins were removed from mother's care, mother struggled with complying with her case plan, maintaining sobriety, and visiting the twins regularly and on time. This resulted in the termination of reunification services on October 11, 2022, and the reduction of mother's visits with the twins. Although mother's subsequent sobriety and efforts are laudable, by October of 2022 the twins had been out of her care for over one year, and for most of their lives. The only detriment proven was that one of the twins would become sad when the visits with mother ended. Mother's circumstances and relationship with the twins is not comparable to the circumstances and relationship between the father and the minor in *In re S.B.*, *supra*, 164 Cal.App.4th 289. Thus, the court did not abuse its discretion insofar as it found the twins would not be greatly harmed by terminating mother's parental rights.

The mother argues that the standard is "whether the children would benefit from mother's presence in their lives, not whether they could eventually be happy without mother." Mother is incorrect. The standard is whether the beneficial relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) Here, the court did not err in finding that the incidental benefit provided by mother's friendly relationship with the twins was outweighed by the benefit of a permanent home with the caregiver the twins had known for two-thirds of their lives.

## II. Mother Forfeited Her Argument That Suspension of Her Visits With the Boys Violated Her Due Process Rights

Mother argues her due process rights were violated when the court suspended her visitation with the boys at the 12-month contested review hearing, because lack of visitation and a relationship with the boys resulted in the termination of her parental

11.

rights. The department argues mother forfeited her right to appeal the issue of suspension of visitation when she failed to argue the issue in her petition for extraordinary writ, pursuant to section 366.26, subdivision (*l*)(2). We find mother forfeited her due process argument when she failed to bring the argument in her petition for extraordinary writ.

### A. Legal Standard

Appeals from section 366.26 hearings are limited by statute. Section 366.26, subdivision (*l*) provides the following:

> "(1) An order by the court that a hearing pursuant to this section be held is not appealable at any time unless all of the following apply:
>
> > "(A) A petition for extraordinary writ review was filed in a timely manner.
> >
> > "(B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record.
> >
> > "(C) The petition for extraordinary writ review was summarily denied or otherwise not decided on the merits.
>
> "(2) Failure to file a petition for extraordinary writ review within the period specified by rule, to substantively address the specific issues challenged, or to support that challenge by an adequate record shall preclude subsequent review by appeal of the findings and orders made pursuant to this section." (§ 366.26, subd. (*l*)(1)–(2).)

Under section 366.26, subdivision (*l*), "[a]ll court orders, regardless of their nature, made at a hearing in which a section 366.26 permanency planning hearing is set must be challenged by a petition for extraordinary writ." (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 247.) "The purpose of the statute is to provide for immediate writ review of meritorious issues subsumed within the order setting a section 366.26 hearing to ensure that the hearing is not infected with reversible error even before it commences." (*Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1512.)

**B.      Analysis**

In this case, mother did timely file a petition for extraordinary writ review pursuant to section 366.26, subdivision (*l*)(1).  However, the petition did not challenge, and mother does not argue that the petition challenged, the court's finding that visitation was detrimental to the boys, and the court's order suspending visitation.  Section 366.26, subdivision (*l*)(2) is clear—because this issue was not specifically challenged in mother's petition for extraordinary writ, she is precluded from subsequent review by appeal.

Mother requests this court to exercise its discretion to excuse forfeiture where an important legal issue is raised, citing *In re Stuart S.* (2002) 104 Cal.App.4th 203, and *In re Karla C.* (2010) 186 Cal.App.4th 1236.  However, both of these cases are unhelpful— they dealt with waiver pursuant to the general rule that "[i]n dependency litigation, nonjurisdictional issues must be the subject of objection or appropriate motions in the juvenile court; otherwise those arguments have been waived and may not be raised for the first time on appeal." (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.)

Courts have declined to apply the waiver rule pursuant to section 366.26, subdivision (*l*) in two circumstances.  First, "the waiver rule will be enforced unless due process forbids it." (*In re Janee J.* (1999) 74 Cal.App.4th 198, 208.)  There must be "some defect that fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole." (*Ibid.*)  Second, "the courts have found good cause to address the merits of a challenge to orders made at the setting hearing in an appeal from the order terminating parental rights when the juvenile court did not adequately inform the parent of their right to file a writ petition." (*In re A.A.* (2016) 243 Cal.App.4th 1220, 1240.)

Mother does not allege either circumstance.  Mother was adequately informed of her right to file a writ petition and did in fact file such a petition.  Likewise, mother has not alleged that some defect undermined her ability to avail herself to the protections afforded by the statutory scheme.  She was well aware of the order suspending visitation

and was able to challenge the suspension in her petition for extraordinary writ had she chosen to do so.

In the absence of an exception to the waiver rule, section 366.26, subdivision (*l*)(2) bars mother from challenging the order suspending her visitation with the boys.

## **DISPOSITION**

The orders terminating parental rights as to all four children are affirmed.


LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


SNAUFFER, J.