Filed 11/24/25  Braaten v. Braaten CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| WILLIAM BRAATEN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARK BRAATEN,<br><br>    Defendant and Appellant.<br><br>SHELLEY MCCONNELL, as Trustee, etc.,<br><br>    Real Party in Interest. | 2d Civ. No. B340413<br>(Super. Ct. No. 19PR-0393)<br>(San Luis Obispo County) |

A trust beneficiary petitioned to have his brother removed as trustee and to surcharge his brother for breaches of the trust. The trial court ordered the trustee removed and ruled that several surcharges be imposed.  The former trustee appeals the court's ruling on the surcharges, but not his removal as trustee.

The trial court's ruling on the surcharges is incomplete because it is not yet in a position to determine specific amounts to

discharge. At this point there is no final appealable judgment. Nevertheless, we elect to treat the premature appeal as a petition for a writ of mandate. The petition for a writ of mandate is denied.

FACTS

Howard and Jonnie Lester established the Lester Family Trust. The trust consists of two subtrusts, the disclaimer trust and the survivor's trust. Only the survivor's trust (Trust) is the subject of this appeal.

Jonnie died in 2004, and Howard died in June 2017.[1] Jonnie's children and Howard's stepchildren, Mark and William (Bill) Braaten, are sole beneficiaries of the Trust. Originally Mark and Howard were cotrustees. When Howard became incapacitated, Mark became the sole trustee. At the time of Jonnie's death, the Trust had a value of approximately $2.6 million.

Before Howard became incapacitated, he had a business purchasing secured hard money loans. In 2007 and 2008, he purchased secured loans in Bill's name, and the Trust took back unsecured notes from Bill in the amounts of $150,000 and $60,000.

In 2013, Howard purchased a home in Mark's name. The Trust took back a promissory note from Mark secured by the home.

In September 2016, Howard moved into a property on Piney Way in Morro Bay owned by the disclaimer subtrust. Mark and his wife moved in with Howard to care for him.

---

[1] When necessary, we refer to individuals by their first names to ease the reader's task.

As sole trustee, Mark used Trust funds to pay personal expenses for himself and his wife. In addition, while living with Howard, Mark made four separate transfers of Trust funds of $10,000 each to himself. The day after Howard died in June 2017, Mark transferred $50,000 of Trust funds to himself. Mark claimed the transfers were gifts from Howard for caring for him. Mark made additional payments to himself totaling $26,000.

In September 2017, David Lester, Howard's biological son whom Howard had disinherited, sued Mark and Bill. David alleged the amendment to the Trust disinheriting him was invalid due to lack of capacity and undue influence. During the pendency of David's action, Mark and Bill agreed that no amount should be distributed from the Trust. The action was settled on January 28, 2019.

In September 2018, Mark produced accountings for the period between June 1, 2016, and May 31, 2018. The accounting showed that Mark made distributions from the Trust to pay for his personal expenses. Bill objected to the accounting, resulting in this action.

### Findings

The trial court found that Mark's administration of the Trust violated the Probate Code.

Mark acted reasonably in withholding distributions from the Trust during the pendency of David's action. But Mark unreasonably delayed distributing the undisputed portion of the Trust assets thereafter.

Instead of making a timely distribution of the Trust funds, Mark used the funds to continue to operate Howard's hard money lending business. Mark acknowledged that the business is a "risky venture."

Mark paid himself excessive trustee fees.

Mark improperly transferred $40,000 to himself prior to Howard's death and $50,000 to himself the day after Howard died. These were not gifts from Howard.

The unsecured notes from Bill and the secured note from Mark were not forgiven as gifts.

Mark improperly used Trust funds to pay for his personal expenses. He failed to keep accurate records.

Mark and his wife continued to live rent free in Howard's residence after Howard died.

As to the notes, the trial court found:

"Bill and his wife Patty executed promissory notes in favor of the [Trust] in the combined amount of $210,000 but did not pay the notes when they were due. The notes did not require monthly payments, but were due on a date certain, at an interest rate of six percent per annum. The Court determined the notes are valid, not gifts, and shall be repaid to the Trust. Bill shall repay the entirety of the loan amount to the [Trust], plus interest at the rate of six percent, from the date of origin of each respective note to the date of entry of final judgment, if not paid off sooner.

"Mark and his wife Suzy executed a promissory note in favor of the [Trust] in the amount of $223,200 on June 23, 2013, that was all due and payable on or before May 23, 2018. The security for Mark's note was the residential real property located at 1668 Maduro Street in Tulare. The note required monthly payments and a late fee of ten percent, and interest at the rate of six percent per year. Mark did not make any monthly payments, or pay any late fees, but the note was paid off when the property was sold, just before Howard died.

4.

"Mark shall pay to the [Trust] interest at the rate of six percent on $223,200 from the date of Mark's note to the date of the sale of the Maduro Street property, as well as late fees for the same period at a rate of ten percent."

The trial court imposed the following surcharges on Mark:

"1.  Mark is surcharged interest at ten percent per annum for the $50,000 that he withdrew from the [Trust], from the time of the withdrawal to the date of repayment.

"2.  Mark is surcharged for the amount of the disbursements Mark made from the Trust for his personal benefit after Howard's death to the date of repayment, with interest at ten percent per annum until paid. . . .

"3.  Mark is surcharged for any personal, unauthorized withdrawals he continues to make from the Trust's assets from the time of the withdrawal to the time of repayment (if repayment occurred) plus ten percent interest.

"4.  Mark is entitled to trustee fees from 2015 through . . . May 2, 2024, calculated at one percent per annum of the value of the Trust.  However, Mark is surcharged for the trustee fees Mark paid himself beyond the rate of one percent per annum of the value of the Trust at the date of Howard's death to the present, plus interest of ten percent per annum for the use of the Trust's funds until paid.

"5.  Mark's request for trustee fees prior to 2015 is denied, and he is denied any trustee fees incurred after May 2, 2024. Mark is denied extraordinary fees for operating Howard's business after his death.

"6.  Mark is surcharged interest on funds not distributed to Bill due to Mark's refusal to stop operating the hard money lending business, from the date of Howard's passing to the date

[Shelley] McConnell assumes her duties as trustee, at ten percent per annum.

"7. Mark is surcharged for one-half of the reasonable rent from date of Howard's death until date of sale, with interest at ten percent per annum.

"8. Mark shall not be reimbursed $42,595 for the alleged upgrades he made to the Piney Way house."

The trial court ordered Mark to personally pay his own attorney fees and costs except those expended defending against Bill's claim that his loans were gifts.

DISCUSSION

I

*Standard of Review and Appealability*

A surcharge order is affirmed if supported by substantial evidence. (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292.) In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences even though different inferences may also be reasonable. (*McIntyre v. Doe & Roe* (1954) 125 Cal.App.2d 285, 287.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

In reviewing the trial court's findings and judgment, we note that the court did not surcharge Mark in any specific amounts. We also note that the court removed Mark as trustee and appointed an independent trustee. The trial court ordered

6.

the independent trustee to prepare an accounting of the Trust for the court's approval. That is a reasonable way to proceed. The trial court cannot make a full and complete determination of the facts in the absence of such an accounting.

Given the lack of specific amounts of surcharge and the lack of a full and complete determination of facts by the trial court, there is no final appealable judgment. Mark does not dispute the portion of the judgment removing him as trustee; he only disputes the surcharges.

We could dismiss the appeal as premature. But the case is fully briefed. We exercise our discretion to treat the appeal as a writ petition. (*A.M. v. Superior Court* (2015) 237 Cal.App.4th 506, 515.)

## II

### *Delayed Distribution*

Mark contends the trial court erred in finding he should have distributed the undisputed amount in the Trust upon Howard's death.

Mark correctly points out that the Probate Code requires that he send notice of Howard's death to each heir of a deceased settlor. (Prob. Code,[2] § 16061.7, subds. (a)(1) & (b)(2).) Thereafter, the heir has 120 days to bring an action to contest the Trust. (*Id.*, subd. (h).) Mark had the discretion not to make a distribution during the period in which an heir may bring an action to contest the Trust. (§ 16061.9, subd. (c).) David timely brought such an action, and Mark and Bill agreed that no distribution should be made until the action was resolved.

---

[2] All statutory references are to the Probate Code unless otherwise specified.

7.

David's action was settled on January 28, 2019. Thereafter the loans that the Trust made to Mark and Bill remained in dispute. Each brother claimed that Howard had forgiven his loan or loans as a gift. The dispute remained until the trial court here determined the loans were not forgiven as gifts.

Mark claims that after the settlement of David's action and the disputed loans, there are no assets in the Trust. Bill claims there are undisputed assets in the Trust that should have been distributed after the settlement with David. The trial court agreed with Bill, but at this point it was in no position to determine a specific amount.

This is a question that only an accounting can settle. If there were undisputed amounts left in the Trust, Mark should be surcharged with interest from the date of the settlement with David.

### III

*Breach of Trust for Continuing Hard Money Lending*

Mark contends the trial court erred in finding he breached the Trust by continuing hard money lending after Howard's death.

Mark argues he had a duty to keep the disputed funds productive. (§ 16007.) But a trustee has a duty to invest trust funds prudently. (*Estate of Collins* (1977) 72 Cal.App.3d 663, 669.) The trial court could reasonably conclude that hard money lending is not appropriate for a fiduciary. Mark even acknowledged that it is a risky business.

Mark claims that section 4.05 of the Trust authorized him to continue his hard money investments, which provides:

"Section 4.05. On any final or partial distribution of the assets of the Trust Estate and on any division of the assets of the

8.

Trust Estate into shares or partial shares, the Trustee may distribute or divide such assets in kind, may distribute or divide undivided interests in such assets, or may sell all or any part of such assets and make distribution or division in cash or partly in cash and partly in kind.  The decision of the Trustee, either prior to or on any division or distribution of such assets, as to what constitutes a proper division of such assets of the Trust Estate shall be binding on all persons in any manner interested in any trust provided for in this Declaration."

Section 4.05 of the Trust governs distribution of Trust assets.  Nothing in the section authorizes Mark to engage in an inappropriately risky enterprise.

IV

*Attorney Fees*

Mark contends the trial court erred in surcharging him for Trust funds he used for attorney fees to defend against Bill's petition.

Mark argues Bill's petition did not give him notice that he could be surcharged for attorney fees.  But there was no need for the petition to give him such notice.  California follows the "American Rule," which provides that each party to litigation must pay his own attorney fees.  (*In re FairWageLaw* (2009) 176 Cal.App.4th 279, 288.)  The trial court in ordering Mark to personally pay his own fees was simply following that rule.

Mark claims that section 3.02, subdivisions (e) and (n) of the Trust authorize the expenditures of Trust funds for attorney fees.

Section 3.02, subdivision (e) of the Trust authorizes Mark to "[c]ommence or defend at the expense of any trust provided for in this Declaration such litigation with respect to any such trust

9.

or any property of the Trust Estate as Trustee may deem advisable." Subdivision (n) provides: "Subject to any limitations expressly set forth in this Declaration and the faithful performance of Trustee's fiduciary obligations, to do all such acts, take all such proceedings, and exercise all such rights and privileges as could be done, taken, or exercised by an absolute owner of the trust property."

Section 3.02 of the Trust authorizes the defense of the Trust or Trust property. Unlike David's action, here Mark is not defending Trust or Trust property. He is defending himself. Mark cites no authority authorizing Trust money to defend his unauthorized use of Trust funds for his personal benefit.

The exception is attorney fees expended to defeat Bill's claim that his loans were a gift from Howard. The loans are a property of the Trust. Section 3.02 of the Trust authorizes the trustee to use Trust funds to protect property of the Trust.

V

*Proof of Amount of Surcharges*

Mark contends Bill failed to prove surcharges 2 (disbursements for Mark's personal benefit), 3 (continuing unauthorized withdrawals), and 7 (one-half of reasonable rent for Howard's use of house after Howard died).

Mark argues he is entitled to the presumption that he acted in good faith in administering the Trust. (Citing *Neel v. Barnard* (1944) 24 Cal.2d 406, 421.) But any such presumption has been overwhelmingly rebutted by evidence that he used Trust funds for his personal benefit. Bill has carried his burden of showing numerous breaches of the Trust.

The essence of Mark's contention appears to be that Bill failed to show any specific amount of damages. But the litigation

10.

is not over.  There is no final accounting from which a specific amount of damages can be determined.  The reconning will have to wait for the next phase of the litigation.

V

*Late Fees on Note*

Mark contends the trial court erred in imposing late fees on his note.

Mark relies on Civil Code section 2954.5, subdivision (a), which provides, in part:

"Before the first default, delinquency, or late payment charge may be assessed by any lender on a delinquent payment of a loan, . . . secured by real property, and before the borrower becomes obligated to pay this charge, the borrower shall either (1) be notified in writing and given at least 10 days from mailing of the notice in which to cure the delinquency, or (2) be informed, by a billing or notice sent for each payment due on the loan, of the date after which this charge will be assessed."

Mark claims there is no evidence he received such notice. Mark does not suggest who would give such a notice.  If the note were made by a third party, Mark would have the duty as a cotrustee or trustee to give the notice for the benefit of the Trust. Mark cannot escape his liability for late fees by failing to perform his duty to the Trust.

Mark argues that no monthly payments were due under the note, and that he paid the note in full before it was due when he sold the property that secured it.  The note provides that it is "payable monthly."  Mark cites Black's Law Dictionary (8th ed. 2004) for the proposition that an amount may be payable without being due.  He claims no payment was due under the note until the final date for payment.  With all due respect to Black's Law

11.

Dictionary, Mark cites no California authority interpreting "payable monthly" to mean monthly payments on a note are optional.

## VII

### *Definite and Certain*

Mark contends that surcharges 2, 3, 6 (interest on funds not distributed due to Mark's refusal to stop hard money lending) and 7 are uncertain and indefinite to enforce.

Again, no final accounting has been made. As trustee, Mark had the duty to keep accurate books and accounts. (§ 16062.) The burden is on the trustee to prove every item of the account and every doubt arising from the trustee's failure to keep proper records or from the nature of the proof the trustee produces must be resolved against him. (*Estate of McCabe* (1950) 98 Cal.App.2d 503, 505.) In other words, any doubts, ambiguities, and uncertainties must be charged against Mark.

## DISPOSITION

We elect to treat the premature appeal as a petition for a writ of mandate. We deny the writ of mandate. Costs are awarded to respondent.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.            BALTODANO, J.

12.

Tana L. Coates, Judge

Superior Court County of San Luis Obispo

_____

The Bailey Law Firm and Jonas Bailey; Law Office of Matthew K. Brown, Matthew K. Brown for Defendant and Appellant.

The Law Office of Clay A. Schroeder and Clay A. Schroeder for Plaintiff and Respondent.

No appearance for Real Party in Interest.