Filed 10/1/24  Marriage of O'Hill CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| In re the Marriage of ANDREA and ROBERT O'HILL. | |
| ANDREA RAE O'HILL, Respondent, v. ROBERT O'HILL, Appellant. | G062146 (Super. Ct. No. 17D003156) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James L. Waltz, Judge. Dismissed.

The Law Offices of Saylin & Swisher, Brian G. Saylin and Lindsay L. Swisher for Appellant Robert O'Hill.

Phillips Whisnant Gazin Gorczyca & Curtin, Gary S. Gorczyca and Megan I. Martinez for Respondent Andrea Rae O'Hill.

\*     \*     \*

This is an appeal by Robert O'Hill (Robert) from an order in a family law dissolution proceeding awarding Andrea Rae O'Hill (Andi) temporary attorney fees and expert costs.[1] Midway through the trial on support issues, the court encountered a lengthy delay due to Covid-19 illnesses befalling the parties, counsel, and staff. At that point, Robert was approximately $900,000 in arrears on temporary support and Andi's attorneys were owed hundreds of thousands of dollars. The court found that a pendente lite order of attorney fees was essential to ensure an even playing field. However, the court deferred any finding on the reasonableness of the fees owed to Andi's attorneys to a later time, with the idea that any retroactive modification to attorney fees could be accomplished at a later date.

Robert contends the court erred. He emphasizes that at the time the court made its order, due to the order of evidence at trial, it had only heard Andi's evidence of his (and her) finances. The court had not yet heard Robert's evidence. Robert also contends that in delaying the assessment of reasonableness, the court relied on a stipulation that did not exist. Robert claims it was error to order (even pendente lite) attorney fees without assessing the reasonableness of those fees.

We grant Andi's motion to dismiss the appeal as being from a non-final order. While pendente lite support orders are generally appealable, the rationale for allowing such piecemeal appeals is that a temporary support order is a collateral order that is final as to the subject matter of the order. However, that rationale does not hold here, where the court expressly

---

[1] We refer to the parties by their first name to avoid confusion and not out of disrespect.

reserved findings on the reasonableness of the fees and expressly made the fees subject to revision at a later date. We acknowledge Robert's objection to that procedure. But regardless of why the court did it, the fact is that the order is not final. Because it is not final, it is not yet appealable. Robert will be free to file a later appeal when a final order is issued. Accordingly, we dismiss the appeal.

STATEMENT OF FACTS

Andi filed the present dissolution proceeding in April 2017. At that time, the parties had three minor children (one of whom is now an adult).

On February 18, 2018, Andi filed a request for order ("RFO") for child support, spousal support, and an award of attorney fees and forensic accountant costs. The hearing on Andi's RFO commenced on June 12, 2018, and continued on portions of seven court days scattered over thirteen months. The hearing featured extensive evidence of the parties' finances and testimony from both sides' forensic accountants.

On July 11, 2019, the trial court issued a detailed ruling on submitted matter. The court made the following factual findings: "[Robert], age 73 years, is a high earner business man/investor; in 1984, [Robert] founded O'Hill Capital and serves as its General Partner; [Robert] (individually) has a 30% percent ownership interest. [Robert] and O'Hill Capital own fractional interests in a vast number of investments, including golf courses, strip malls, and many other improved and unimproved properties. O'Hill Capital's investments are numerous and diverse, and O'Hill Capital has many business partners. See trial exhibit 505, 506,519, and 520. Given the complexities of this unique case, Andi retained CPA Drew Hunt and [Robert] retained CPA Glen Mehner. Meanwhile, during the marital

3

years (disputed; 10+/- years) Andi did not work and stayed focused on domestic duties and 'primary parent' to the party's three children, . . . age 14, . . . , and . . . age 7. The marital standard of living ("MSOL") was very high; during the entire marriage, the parties resided within the exclusive enclave known as Emerald Bay, located in North Laguna Beach, a guard gated beach side community. The former family residence was at 95 Emerald Bay, a stunning, three story single family residence, 4,436 square feet, 4, bedroom, 5 baths, and a 180+ view of Emerald Bay cove, the home's value was estimated at 8+ million. Today, [Robert] lives at 95 Emerald Bay, alone, the home owned by an entity [Robert] controls, and the home free of debt. Meanwhile, Andi lives down the same street at 150 Emerald Bay, a one story rented home (2,156 square feet); 3-bedroom, 3 baths. Without quantifying the MSOL by monthly spending, the MSOL included frequent air travel by private/charter jet, a residential chef, private schools, high end vacations, domestic help, expensive cars, and expensive extracurricular actives, such as equestrian activities (two horses, stabled; average monthly expense = $5,000) and private golf lessons."

Throughout the hearing, Robert took the position that he no longer had the ability to borrow from his various entities in order to support that lifestyle. However, the court disbelieved Robert, concluding that Robert still had access to his past pattern and practice of "borrowing amongst the mosaic of entities . . . ." The court's conclusion was based on specific examples. For instance, Robert's forensic accountant testified that in 2017 his income was approximately $43,000 per month, yet his lifestyle involved spending around $72,000 per month. Also, during the same time, Robert purchased a yacht with a $200,000 down payment. The court awarded to Andi $40,000 per month in "family support" (pursuant to the parties'

4

stipulation, this was combined spousal and child support). The court also ordered that Robert pay Andi $130,000 in past attorney fees and $10,000 per month for prospective attorney fees.

On July 26, 2019, Robert filed a motion for reconsideration, asserting the court had made certain mistakes, including that the court mistakenly used a "monthly" calculation rather than a "yearly" calculation in the Dissomaster report, with the result that the $40,000 support order should be reduced to approximately $27,000 per month. The court denied the motion, concluding that any upward adjustment from the Dissomaster report was justified based on Robert's ability to pay and the MSOL.

On November 26, 2019, Andi filed an ex parte application to determine the support arrearage then owing by Robert and to obtain a charging order against Robert's interest in O Hill Capital.

At a February 3, 2020, hearing on Andi's RFO, the trial court found Robert owed Andi $136,000 in past due and unpaid family support, plus interest. The arrearage was undisputed. The court granted the charging order.

On August 14, 2020, Robert filed a Request for Order to modify the July 11, 2019 family support order. Robert alleged that his income had been reduced. The hearing on his request was originally calendared for September 29, 2020, continued multiple times, and ultimately vacated on the trial court's own motion and consolidated with the trial on bifurcated issues. The consolidated hearing was scheduled for October 2021. However, in October 2021 the entire litigation was stayed as a result of a motion filed by Robert to disqualify the trial judge.

On March 14, 2022, the court set a trial setting conference for April 7, 2022, in which, among other things, the parties were invited to

present arguments on "the court's own motion" to establish an attorney fee shifting order. The proposed fee shifting order had been telegraphed in an earlier minute order and provided that any moneys Robert paid to his attorney would be split 50/50 with Andi's attorney. It would also have directed $50,000 in payments on specified dates to Andi's attorney for past fees. The hearing on that motion was continued to May 2022, and trial on bifurcated issues was scheduled for July 2022.

On May 24, 2022, the parties entered into a Stipulation and Order wherein Robert was ordered to pay Andi $160,000 toward any amount owed on the existing July 11, 2019 fee order on or before May 28, 2022 as well as $10,000 on June 1, 2022 and July 1, 2022.

Trial on bifurcated issues commenced on July 12, 2022. The court first heard from Andy's forensic accountant, Drew Hunt. Over the ensuing 13 days of trial, various witnesses were called by Andi to testify, with Hunt taking up the lion's share of the time.

After the hearing on August 24, 2022, the hearing was "paused due to Covid-19 illnesses befalling parties, attorneys and court staff and CPA scheduling conflicts." The attorneys estimated that they would need an additional 13 days of trial time to finish the trial. The court scheduled resumed trial hearings for January 30, 2023.

In the meantime, on November 7, 2022, the court ruled on what it described as Andi's pendente lite motion for supplemental attorney fees and costs, which is the subject of this appeal. Beginning in December 2022, the court vacated its prior award of $10,000 per month. Instead, it ordered Robert to pay $530,630 for past attorney fees and $240,996 for outstanding forensic accounting fees by January 24, 2023. It further ordered Robert to pay $150,000 for future fees by February 17, 2023.

6

The court included an extensive set of findings and analysis to support the ruling. The court found that there was a gross disparity between the parties in access to funds to maintain counsel and experts. Andi was wholly dependent on Robert. Robert's income, "while disputed and not yet determined," was substantial. His separate property net worth, "while disputed and not yet determined," is very substantial. The court quoted Hunt's report from trial that Robert's net worth was approximately $32 million. The court further noted that all of Robert's fees were paid by O'Hill Capital, of which Robert was the managing partner. The court found that, "[b]ased on the totality of circumstances so far known to the court," Robert had the ability to pay Andi's attorney fees. The court cited trial exhibits and Hunt's testimony for that finding, though it noted that the evidence was "disputed" and that Robert's CPA "has not yet testified." It went on, "From the evidence so far presented, and while disputed by [Robert], the court (so far) has drawn a reasonable inference [Robert] has access to funding vis-à-vis [O'Hill Capital] . . . ."

Critically, the court stated that any objection as to the reasonableness of Andi's fees would be decided at a later time: "[Robert] forcefully contends Andi has unwisely incurred . . . huge amounts of attorney fees and costs pursuing meritless claims . . . ." "Maybe and maybe not. To be determined, as agreed, during a bifurcated trial withing these bifurcated proceedings." "Long ago, the attorneys agreed to litigate any [Family Code

section] 2032 issue after trial on support issues now on-going."[2] The court found that any further delay in awarding Andi pendente lite attorney fees would infuse the proceedings with "gross unfairness that if allowed, renders the ongoing trial presumptively . . . not a fair proceeding . . . ." The court observed that the parties' disparity in resources was exacerbated by the fact that Robert was approximately $900,000 in arrears on family support payments.

In discussing these findings, the court observed: "[Robert] reminds the court Andi's [motion] must under law . . . not be considered in a vacuum but instead, considered in the context of BOTH [sections] 2030 and 2032, a 'packaged' set of statutes requiring scrutiny of both 'need' and scrutiny as and for the necessity and reasonableness of historic fees. [Robert] is correct on the law, but not correct in the instant application of law to the on-going process. [¶] First, long ago the parties agreed any challenge as and for attorney fees and costs will follow trial now solely focused on support; *the fee dispute staged for later debate and consideration following the support trial*." (Italics added.) "[Robert's] strong objections have been heard, however any [section] 2032 analysis is not now 'at-issue' but instead, and by agreement, reserved for another time." The court went on, "adjudication of any defense to fees under [section] 2032 is nuanced, detailed and the debate over fees reserved (at this time) by agreement, the process will play out following a (reliable) ruling on retroactive and prospective support." At the

_____

[2] Family Code section 2032, subdivision (a), provides, "The court may make an award of attorney's fees and costs under Section 2030 or 2031 *where the making of the award, and the amount of the award, are just and reasonable* under the relative circumstances of the respective parties." (Italics added.)

end of the court's order, in a section entitled "RESERVATION," the court stated, "1. The court reserves over assessing the reasonableness and necessity of Andi's attorney fees and costs paid by [Robert] *and reallocation between the parties*." (Italics added.) "The reasonableness and necessity of attorney fees and costs ([§ 2032]) paid by [Robert] and paid to Andi's counsel . . . remains a trial issue, to be resolved at a future date."

The court then concluded by stating that if Robert failed to pay the fees on the schedule it ordered, the court would consider ordering a mistrial or denying Robert's motion seeking modification of temporary family support.

On December 22, 2022, Robert filed a notice of appeal from the pendente lite attorney fee order of November 7, 2022.

After the notice of appeal was filed, the trial on spousal and child support, which had been paused, was completed, and the court issued a final statement of decision. On our own motion, we take judicial notice of the final statement of decision.[3] In that statement of decision, the court made strong findings against Robert, concluding that he has engaged in a consistent scheme to hide his income and assets from tax authorities and the court. "The court formed the opinion that [Robert] minimizes or shelters income to reduce taxes owing and now, in this setting, shelters income in an effort to minimize or avoid his support obligation." "In this case, and over many years, [Robert] engaged in business practices designed to shelter income available for support by characterizing personal expenses as business expenses." The court concluded Robert has substantial wealth: "[Robert] has indirect ownership

_____

[3] Our judicial notice is limited to the fact that the court has made certain findings. We express no opinion on the validity of those findings.

9

interests in assets conservatively valued at $93 million, yet he professes to own nothing." The court found Robert had personal assets and wealth amounting to approximately $32 million. The court specifically found that Andi's CPA Hunt was credible and that Robert's CPA was not credible because Robert's CPA relied on unreliable ledgers doctored by Robert.

The court set a hearing for June 20, 2024, to determine attorney fee arrearages.

DISCUSSION

One of the fundamental tenets of appellate practice is the one final judgment rule. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756.) That rule holds that an appeal may not be taken from interlocutory rulings, but instead any error during litigation must be raised in an appeal from the final judgment. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.) "'The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.'" (*Ibid.*)

Courts have carved out an exception to this rule for collateral rulings that are final as to the subject matter of the ruling. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 (*Skelley*).) Under this exception, it has routinely been held that pendente lite orders of support are immediately appealable. (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637.) The rationale is that the order is final as to the temporary support and will have no effect on the remainder of the proceedings. (*Skelley,* at pp. 368-369.)

However, that rationale does not hold here. The court expressly reserved additional relevant findings for a future date and reserved the

10

authority to reallocate attorney fees in light of subsequent findings.[4] By contrast, in *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1311, the court found a pendente lite order of attorney fees was final, stating, "Here, the family court clearly indicated its intent to render an order that was dispositive of the issue of future attorney fees; *nowhere in the order was there any reservation of jurisdiction to revisit the issue.* As such, the order is appealable under Code of Civil Procedure section 904.1." (Italics added.) We face precisely the opposite situation here: the court expressly reserved jurisdiction to revisit its pendente lite attorney fee order. Because this was not a final order, it is subject to the one final judgment rule and is not appealable. "An appeal from a judgment or order that is not appealable must be dismissed." (*Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 384.)

Robert has requested that, if we find the order to be nonappealable, we instead exercise our discretion to treat his appeal as a writ petition. "We have discretion to treat a purported appeal as a petition for writ of mandate." (*A.M. v. Superior Court* (2015) 237 Cal.App.4th 506, 515.) However, "that power should be exercised only in unusual circumstances" that are " ' "compelling enough to indicate the propriety of a petition for writ . . . in the first instance . . . ." ' " (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366-1367.) "Because writ review is an extraordinary remedy, courts generally do not grant writ relief absent extraordinary circumstances. [Citation.] Pertinent factors include whether (1) 'the party seeking the writ lacks an adequate means, such as direct appeal, to obtain relief,' (2) 'the petitioner will suffer harm or prejudice which cannot be

---

[4] We express no opinion on the propriety of this procedure.

corrected on appeal,' or (3) 'the petition presents an issue of first impression that is of general interest to the bench and bar.'" (*Department of Corrections & Rehabilitation v. Superior Court* (2023) 94 Cal.App.5th 1025, 1037.)

We decline to exercise that discretion here because there is no irreparable harm in waiting for a final order, and because any order we issue could effectively become moot.

As to irreparable harm, the payment deadlines could have been challenged by writ initially. When the court set a specific schedule and threatened to declare a mistrial if Robert failed to meet the schedule, that may have been a sufficiently extraordinary circumstance to justify writ relief. However, by now, the deadlines have long since passed. At this point, the money is either paid or not and the only relief we could provide would be to reverse the monetary award. Absent some unusual circumstance, we generally do not address money damages through extraordinary writ relief. An appeal is sufficient.

As to mootness, suppose we were to, as Robert urges, issue a reversal requiring the court to vacate its award because it did not consider Robert's evidence of financial circumstances. We know that by now the court *has* considered all the evidence, and by the time our disposition reaches the court, it may have already reaffirmed its original order based on all of the evidence, or it may have changed it entirely. In either case, our disposition would be an exercise in futility. We would be directing the court to do something it has already done, or to modify an order it already modified. This problem exists precisely because the court's pendente lite fee award was not final. Rather than potentially waste this court's resources, we will dismiss this appeal and consider any challenge to the pendente lite attorney fees in a future appeal (if any) from a final order.

12

## DISPOSITION

The appeal is dismissed. Andrea shall recover her costs incurred on appeal.[5]


                                    SANCHEZ, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.

_____

[5] Robert filed a motion to augment the record to include certain reporter's transcripts that were unavailable when he designated the record on appeal. We deny that motion as the transcripts are not relevant to our determination that the appeal was from a nonappealable order.

Andi filed a request for judicial notice of a Ruling on Submitted Matter that sets forth Robert's support obligations. She also requested judicial notice of a minute order setting the trial on all remaining issues for April 21, 2024. These documents are consistent with the Final Statement of Decision that we took judicial notice of on our own motion, and thus we grant her request for judicial notice.

At the time that we sent out our notice of intent to take judicial notice of the Final Statement of Decision, Andi filed a request that we alternatively take judicial notice of an updated Final Statement of Decision filed on June 7, 2024, which is identical to the document we took judicial notice of, but it includes certain exhibits to support the court's findings. We deny the alternative request for judicial notice, as we are not taking judicial notice of the truth or validity of any proposition in the Final Statement of Decision, and thus we have no need of the exhibits.